UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Elizabeth Placzek

        Plaintiff,

v.

Mayo Clinic, and Mayo Clinic Health System–Southeast Minnesota Region

        Defendants.

Case No. 18-cv-2952 (JNE/KMM)
ORDER

Plaintiff was a doctor at Mayo Clinic Health System–Southeast Minnesota Region ("MCHS–SE") between July 2013 and December 2017, with a clinical appointment at Mayo Clinic ("MC") between July 2013 and December 2016. She alleges that MCHS–SE and MC breached her employment contract; violated the Minnesota Payment of Wages Act ("MPWA") and the Minnesota Whistleblower Act ("MWA"); and seeks a declaratory judgment stating that she is not indebted to Defendants under the Educational Loan Reimbursement Program because Defendants breached her employment contract.[1] Defendants move for summary judgment on Plaintiff's claims and, as discussed below, the Court grants this motion.

---

[1] Plaintiff sued both Defendants on all four counts in her amended complaint. At the motion hearing, Plaintiff stated that she was suing MC under the MWA and suing MCHS-SE under the MPWA, for breach of contract, and for a declaratory judgment. As such, the Court does not address the MWA claim against MCHS-SE or the other counts listed against MC.

1

BACKGROUND

A. Plaintiff's Employment Agreement and Salary

Plaintiff was a pediatric emergency room physician who began working for MCHS-SE in July 2013.[2] Placzek Dep., Ex. 6. MCHS-SE is a wholly owned subsidiary of MC but MCHS-SE has its own board of directors and MC does not control MCHS-SE's day-to-day operations. Madsen Dep. at 10–11; Gulden Decl. ¶ 3. Plaintiff signed an Employment Agreement (the "Agreement") with MCHS-SE, which outlined that she was a full-time equivalent ("FTE")[3] physician who would spend 80% (.8) of her time at MCHS–SE and 20% (.2) of her time at MC under a clinical appointment. Placzek Dep., Ex. 6. Only Plaintiff and MCHS-SE are signatories to the Agreement and Plaintiff was "under the direction and supervision" of MCHS–SE. *Id.* Plaintiff had no separate written agreement with MC.

Plaintiff was initially paid an hourly rate instead of an annual salary, with her vacation pay built into her hourly rate. Placzek Dep. at 63–65; Gulden Decl. ¶¶ 10–11. Beginning on January 1, 2016, MCHS-SE changed to an annual salary model, under which physicians needed to work a set number of hours to earn their full salary. Placzek Dep. at 63–65; Gulden Decl. ¶¶ 10–11. Like the hourly model, physicians' vacation pay was built into their annual salary and they were expected to take vacation outside their assigned hours. Gulden Dep. at 36; Gulden Decl. ¶¶ 10–12. Before transitioning to the new

---

[2] Plaintiff began her employment with Mayo Clinic Health System-Albert Lea and Austin, which then merged into MCHS-SE. Gulden Decl. ¶ 2. Because this distinction is irrelevant, the Court refers to both entities as MCHS-SE.
[3] 1.0 FTE refers to 100% full time equivalent, .9 FTE refers to 90% full time equivalent, and so forth.

2

compensation model, MCHS-SE communicated the changes at a meeting in September 2015 and sent Plaintiff a memorandum regarding these changes. Gulden Dep. at 32. At all times, Plaintiff was classified as a professionally exempt employee under the state and federal fair labor standards. Gulden Decl. ¶ 9.

### A. Plaintiff's Clinical Appointment

MC and MCHS-SE created a Clinic Associate program that allowed an MCHS-SE physician to obtain practicing privileges at MC. Gulden Decl. ¶¶ 4–7. Through this program, Plaintiff had a clinical appointment at MC for .2 of her FTE between July 2013 and December 2016. *See* Placzek Dep., Exs. 6, 12.

During Plaintiff's clinical appointment with MC, there were various concerns about her conduct and interactions with patients. In September 2016, she was verbally informed that her appointment would be terminated on December 31, 2016. Placzek Dep. at 210–13. She was sent a memorandum informing her of the same on October 11, 2016. *Id.* MCHS-SE agreed to increase Plaintiff's hours at MCHS-SE to compensate for the hours lost at MC. Gulden Decl. ¶ 14.

### B. Changes in Plaintiff's FTE

Plaintiff was hired at 1.0 FTE but changed her FTE at various times during her employment. In early 2015, at her request, Plaintiff's FTE was lowered to .9 FTE, with .7 to MCHS-SE and .2 to her clinical appointment at MC. Placzek Dep. at 190–92. In May 2016, Plaintiff raised the issue of being assigned at .9 FTE while actually working at .913 FTE. *Id.* at 196–97; Gulden Decl. ¶ 15. In response, MCHS-SE allowed Plaintiff to alternate between 24 and 25 shifts every other month so that her assigned and actual FTE

3

was .9. Gulden Decl. ¶ 15. In September 2016, after being informed that her clinical appointment at MC would be terminated, she initially chose to increase her FTE to 1.0 at MCHS-SE. *Id.* ¶ 14. However, Plaintiff went on maternity leave in October 2016, and chose to return at .8 FTE in January 2017. *Id.*

    C. Plaintiff's Miscarriage

In October 2015, Plaintiff suffered a miscarriage and took time off for a surgery and follow-up doctor appointments. Placzek Dep. at 31, 120–125. Plaintiff spoke to a supervising doctor about being absent for at least one shift but did not request short-term disability ("STD") benefits. *Id.* at 150–52. In 2017, Plaintiff requested STD benefits for her 2015 miscarriage and MCHS-SE assessed how many days she was entitled to. Gulden Dep. at 109–11, 122–24. MCHS-SE awarded her five days of STD, amounting to $6,948.08, and based her STD pay at the .9 FTE that she worked in October 2015. Placzeck Dep. at 121, 190–92; Placzek Dep., Ex. 3 at 9.

    D. Plaintiff's Maternity Leave

Beginning in October 2016, Plaintiff took twelve weeks of maternity leave. *Id.* at 32. Before beginning her maternity leave, MCHS-SE administration wrote her an email on September 19 explaining that her upcoming maternity leave would be based on her then .9 FTE. *Id.* at 162–64. She received STD pay for the first six weeks at .9 FTE, amounting to $12,822.19 per pay period. *Id.* at 74; Gulden Decl., Ex. C. The last six weeks were unpaid vacation leave. Placzek Dep. at 32–33.

E. Resignation and Lawsuit

After giving sixty days of notice, Plaintiff resigned from MCHS-SE in December 2017. *Id.* at 236–37.

Plaintiff now brings claims against MC under the MWA, asserting that MC terminated her in retaliation for reporting MC's alleged violation of common law and contractual obligations. Plaintiff raises claims against MCHS-SE for breach of contract and under the MPWA. Plaintiff argues that she should have received more STD leave for her 2015 miscarriage, increased STD pay for her 2016–2017 maternity leave, and paid vacation for her last six weeks of maternity leave. Plaintiff also requests a declaratory judgment stating that she is not indebted to MCHS-SE under the Educational Loan Reimbursement Program because MCHS-SE breached her contract.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). In determining whether summary judgment is appropriate, a court views the record and all justifiable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255.

5

DISCUSSION

A. MWA Claim Against MC

Under the MWA, "[a]n employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee" because the employee "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law . . . ." Minn. Stat. § 181.932, subdiv. 1 (2019). Plaintiff claims MC was her employer and terminated her in retaliation for reporting MC's violation of common law and contractual obligations. MC asserts Plaintiff cannot sue MC under the MWA because MC was not her employer. In short, the parties dispute whether Plaintiff was an employee or an independent contractor.

To determine whether an employer-employee relationship exists, the Minnesota Supreme Court examines: "(1) [t]he right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge [the employee]." *Guhlke v. Roberts Truck Lines*, 128 N.W.2d 324, 326 (Minn. 1964); *see also Takuanyi v. Zepeda Gonzalez*, No. A18-0362, 2019 WL 272882, at *3 (Minn. Ct. App. 2019). The most important of these factors is the right, "not just the exercise [of that right]," of the employer to control the means and manner of performance. *Hunter v. Crawford Door Sales*, 501 N.W.2d 623, 624 (Minn. 1993); *see also Takuanyi*, 2019 WL 272882, at *3.

No reasonable jury could find that MC was Plaintiff's employer because the factors weigh so lopsidedly against this conclusion. Generally, the third and fourth factors would

6

weigh in Plaintiff's favor; MC likely furnished any physician equipment or tools and controlled the hospital premises when Plaintiff worked at MC. However, the Eighth Circuit has found that the "location of the work, and source of equipment and staff are not indicative of employee status because all hospital medical staff are skilled and must work inside the hospital using its equipment." *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 763 (8th Cir. 2014). The remaining—more important—factors weigh against Plaintiff. She only received payment from MCHS-SE and her employment contract only gave MCHS-SE the right of termination. Finally, the right to control the means and manner of performance—the most important factor—was up to MCHS-SE. While Plaintiff worked a portion of her time at MC through a clinical appointment, and MC performed certain performance assessments, Plaintiff's employment contract stated that MCHS-SE would determine Plaintiff's work duties and supervise her.

> Physician agrees to provide such duties at the times and locations determined by Employer . . . Physician shall devote all of Physician's professional time, attention, knowledge, and skills solely to the business and affairs of Employer. Physician will work on a "full-time" basis, 80% in Austin [MCHS-SE] and 20% in Rochester St. Mary's (RST) [MC], as determined by Employer . . . Physician's duties shall be performed under the direction and supervision of Employer . . . .

Placzek Dep., Ex. 6. While Plaintiff argues that her clinical appointment gave MC the right to control the means and manner of her performance, the Eighth Circuit has held that a doctor who can lose staff privileges at a hospital—like Plaintiff did at MC—is an independent contractor with respect to that hospital. *See Alexander*, 768 F.3d at 762 ("However, this court and several other circuits have held that a doctor who has lost staff privileges at a hospital was an independent contractor, not a hospital employee.").

7

Because only an employer can be sued under the MWA, and no reasonable jury could find that MC was Plaintiff's employer, the Court grants summary judgment in favor of MC.

B. Breach of Contract Claim Against MCHS–SE

"The elements of a breach of contract claim are (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to h[er] right to demand performance by the defendant, and (3) breach of the contract by defendant." *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (internal quotations and citations omitted). The parties dispute the third element. Plaintiff alleges MCHS-SE breached the Agreement by: (1) compensating her for five days instead of twelve days for her miscarriage, (2) paying her six weeks of STD during her maternity leave at her assigned FTE instead of her actual FTE, and (3) failing to compensate her for her last six weeks of maternity leave.

1. Miscarriage

Plaintiff first claims MCHS-SE breached the Agreement by compensating her for five days of STD instead of twelve days for her miscarriage and related appointments. MCHS-SE argues that this portion of her claim is time-barred under Minnesota law.

Minnesota Statutes Section 541.07(5) states that actions for the recovery of wages shall be brought within two years unless the nonpayment is willful. Willful nonpayment "means the intentional and deliberate breach of an obligation to pay agreed upon wages," and will extend the statute of limitations to three years. *Levin v. C.O.M.B. Co.*, 441 N.W.2d

8

801, 805 (Minn. 1989). MCHS-SE must have knowingly breached an existing obligation to pay Plaintiff for the three-year statute of limitations to apply.

Plaintiff's miscarriage occurred in October 2015 and she testified that the leave she sought "was clustered in less than [a] four-week period . . ., the first date of which [she] was aware something was going on was maybe the last week in September." Placzek Dep. at 130.  Assuming Plaintiff realized she was having miscarriage-related difficulties on September 30—the last day of September—her STD period ended four weeks later, on October 28. Thus, Plaintiff's cause of action would have accrued when she should have received compensation for her STD leave sometime in November or, at the latest, December. *See Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 835 (Minn. 2011) (stating that if "an employer has a continuing contractual or statutory obligation to pay wages," "a new cause of action [arises] each time there is an improper payment"); *Guercio v. Prod. Automation Corp.*, 664 N.W.2d 379, 387 (Minn. Ct. App. 2003) ("[U]nder Minnesota law, a contractual cause of action for lost wages arises each time a payment is due, but is not paid."). By this count, Plaintiff should have filed suit by December 2017 at the latest. But, even assuming timelines generous to Plaintiff, over two years passed between when she should have received compensation and her filing of this lawsuit in October 2018.

Plaintiff's claims do not fall under the three-year statute of limitations because the record does not support that MCHS-SE was willful in its nonpayment. MCHS-SE administration reviewed Plaintiff's claim before determining that five days of STD was

9

appropriate and Plaintiff has not cited to any facts suggesting that more was appropriate.[4] No reasonable jury would find that MCHS-SE intentionally disregarded an obligation to compensate Plaintiff for the increased STD pay that she seeks.

The Court grants summary judgment in favor of MCHS-SE on this portion of the claim because it is time-barred.

### 2. First Six Weeks of Maternity Leave

Plaintiff next claims that MCHS-SE failed to pay her at her actual FTE during her first six weeks of maternity leave. Plaintiff claims she worked at .913 FTE despite being assigned a .9 FTE. MCHS-SE argues that Plaintiff's claim is time-barred and that alternatively, Plaintiff had no contractual right to be paid at her actual FTE instead of her assigned FTE. Assuming this portion of Plaintiff's claim was timely raised, it fails on the merits.

Minnesota does not require employers to provide paid maternity leave or short term disability benefits. *See Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 126 (Minn. 2007) ("No statute or case law in Minnesota mandates the terms on which paid time off must be offered, or that it be offered at all."). Thus, any entitlement to paid time off is "wholly contractual." *Id.* (internal quotations and citation omitted). Even assuming her actual and assigned FTE were different, Plaintiff has not pointed to any part of the Agreement or to a MCHS-SE policy that requires MCHS-SE to pay STD benefits at her actual FTE instead of her assigned FTE.

---

[4] For instance, Plaintiff could have identified dates in 2015 that she missed a work shift due to her miscarriage.

10

The Court grants summary judgment in favor of MCHS-SE on this portion of the claim because no reasonable jury could find that MCHS-SE breached a contractual obligation to Plaintiff when paying Plaintiff at her assigned FTE instead of her actual FTE.

    3.  Last Six Weeks of Maternity Leave

Finally, Plaintiff claims MCHS-SE breached the Agreement when it did not pay her for her last six weeks of maternity leave. MCHS-SE claims it had no contractual obligation to provide paid vacation. The relevant portions of the Agreement are:

> **Section 8. Compensation.** As payment for all of Physician's services pursuant to this Agreement, Employer shall pay Physician the compensation described in Exhibit A to this Agreement. Physician shall look solely to Employer for compensation for Physician's services . . . .
> **Section 9. Benefits.** . . . Physician shall also be entitled to take time off for vacation, continuing education or other reasons as determined by Employer under its related policies and procedures. The employee benefit plans with respect to which physician employees are generally eligible are described in Exhibit B to this Agreement.
> . . .
> **Section 19. Entire Agreement; Amendment.** This Agreement constitutes the entire agreement between the parties and supersedes all prior oral and written agreements relating to the same subject matter. This Agreement may be amended only in a writing signed by each of the parties; however, Exhibits A and B to this Agreement and the policies, plans and programs described therein may be changed by Employer from time to time, without constituting an amendment to this Agreement.

Placzek Dep., Ex. 6 (emphasis in original).

Plaintiff asserts the Agreement is ambiguous because it does not specify whether vacation is paid or unpaid and because the policies referred to in the Agreement entitle Plaintiff to paid vacation. "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) (internal quotations and citations omitted).

11

Determining whether a contract is ambiguous is a question of law. *Id.* "If a contract is unambiguous, the contract language must be given its plain and ordinary meaning, and shall be enforced by courts even if the result is harsh." *Id.* at 346–47 (internal quotations and citation omitted).

Plaintiff's arguments are unavailing. Section 9 provides for vacation but there is no mention of *paid* vacation in the Agreement. Similarly, exhibit A, referenced in Section 8, provides a compensation scale with no mention of paid leave. Placzek Dep., Ex. 6. The policies which Plaintiff points to—the Professional Absence Record policy, the Short/Long Term Disability policy, the FMLA policy, and the Personal Leave of Absence policy— have no mention of paid vacation for physicians. *See* Cody Decl., Ex. 7 at 1 ("If there are enough available vacation days, time is paid. If Vacation balance is insufficient, time may be converted to personal unpaid leave."); Ex. 4 at 1 ("Six weeks of paid STD [not vacation time] is available for the mother following the birth of a child"); Ex. 8 at 1 ("FMLA provides the opportunity for up to twelve (12) work weeks of unpaid time for the situations defined above [including parental leave]."); Ex. 9 at 1 ("A personal leave of absence is always unpaid time off."); *see also* Cody Decl., Ex. 6 at 3 (listing that physicians can take 20 days of vacation their first year and 24 days for years one through fourteen, with no mention of paid vacation).[5]

---

[5] This is consistent with Gulden's declaration explaining MCHS-SE's policies regarding vacation time for physicians:
> Under the old hourly pay model, vacation pay was built into the hourly rate paid to an ER physician. As a result, ER physicians did not get paid vacation for time they took off. Under the new salary model, MCHS-SE continued the practice of building vacation pay into the compensation paid to an ER

In sum, the Agreement does not present any ambiguity on its face—physicians at MCHS-SE may take vacation but are not compensated separately for this time. Because no reasonable jury could find that MCHS-SE was contractually required to provide Plaintiff with paid vacation, the Court grants summary judgment in favor of MCHS-SE on this portion of the claim.

C. Declaratory Judgment and MPWA Claim Against MCHS–SE

The Court also grants summary judgment in favor of MCHS-SE on Plaintiff's MPWA claim and request for declaratory judgment because both are derivative of her breach of contract claim. The MPWA is "is a timing statute, mandating not *what* an employer must pay a discharged employee, but *when* an employer must pay a discharged employee." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 125 (Minn. 2007) (emphasis in original). Plaintiff's MPWA claim must be dismissed because no reasonable jury could find that Plaintiff had a right to the employment benefits she seeks. Similarly, the Court cannot issue the declaratory judgment Plaintiff requests because the Court has granted summary judgment in favor of MCHS-SE on the breach of contract claim.

CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT Defendants' Motion for Summary Judgment, ECF No. 25, is GRANTED.

---

physician. As a result, an ER physician does not receive paid vacation under the salary model currently in place. This applied to Dr. Placzek during her employment with MCHS-SE.

Gulden Decl. ¶ 11.

13

Dated: July 1, 2020

                                                          s/Joan N. Ericksen  
                                                          JOAN N. ERICKSEN  
                                                          United States District Judge